**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CYNTHIA CROWE, :

                      Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                      Defendant. :

Case No. 3:08-cv-444

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

3

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on June 18, 2004, alleging disability from January 1, 2004, due to head and back injuries, decreased vision of her right eye, hip arthritis, bipolar disorder, seizure disorder, and a torn rotator cuff. (Tr. 89-91; 550-52). Plaintiff's applications were denied initially and on reconsideration. (Tr. 41-44; 47-49; 554-57; 559-61). A hearing and a supplemental hearing were held before Administrative Law Judge Thaddeus Armstead, (Tr. 566-607; 608-64), who determined that Plaintiff is not disabled. (Tr. 18-31). The Appeals Council denied Plaintiff's request for review, (Tr. 7-10), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe left shoulder strain, the residuals of remote hip surgery, vertebrogenic disorder of the cervical and lumbar spine, blindness of the right eye, and depressive disorder NOS, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 30, finding 3). Judge Armstead also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.*, findings 4, 7. Judge Armstead then used sections 202.25 and 201.19 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 31, findings 11, 12). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31).

In her Statement of Errors, while she briefly reviews her alleged exertional impairments, Plaintiff focuses on her alleged mental impairment. (Doc. 8). This Court will do the

4

same.

The record establishes that Plaintiff sustained a work-related head injury in 1998, and was subsequently diagnosed with post-concussion syndrome. (Tr. 174-75). In addition, Plaintiff has a history of lumbosacral radiculopathy, (Tr. 176-78), degenerative joint disease in her left hip, (Tr. 294), a left cubital tunnel syndrome, (Tr. 368), and she is blind in her right eye. (Tr. 202).

Plaintiff was seen for "crisis assessment" at Mental Health Services for Clark County and Madison County on June 15, 2004, at which time it was noted that she reported significant depression, that she appeared worried and sad, her mood was depressed, and her affect was dramatic. (Tr. 358-62). Plaintiff's diagnoses were identified as post-traumatic stress disorder and a depressive disorder NOS; she was assigned a GAF of 55. *Id.*

Examining psychologist Dr. Tanley reported on September 21, 2004, that Plaintiff went to the ninth grade in school, her speech and thoughts were normal, her affect was appropriate to her thought content, and that her psychomotor activity was within acceptable limits. (Tr. 215-17). Dr. Tanley also reported that Plaintiff did not display any motor or autonomic manifestations of anxiety, she was alert and oriented, and her remote memory was superficially intact. *Id.* Dr. Tanley identified Plaintiff's diagnoses as depressive disorder NOS and borderline intelligence; he assigned her a GAF of 60. *Id.* Dr. Tanley opined that Plaintiff's ability to relate to others was unimpaired, her abilities to understand and follow simple instructions and to maintain attention to perform simple, repetitive tasks were mildly impaired, and that her ability to withstand the stress and pressure of daily work was moderately impaired. *Id.*

On April 5, 2005, and May 25, 2005, Plaintiff underwent a vocational assessment at ProWork Center. (Tr. 268-82). With respect to Plaintiff's mental health, she reported that she had

been dealing with depression since she was very young, that she had been diagnosed as "manic-depressive", and that she had been hospitalized twice for mental health issues. *Id.* Plaintiff also reported that she had some mental health outpatient treatment as a young adult but nothing long-term, that she has been on and off anti-depressants for years, that she used to be addicted to drugs, and that she liked to be by herself. *Id.* After Plaintiff's evaluation and testing were completed, the evaluator reported that she was concerned about Plaintiff's ability to cope with a traditional work setting with all of the demands for interaction with others. *Id.*

In May, 2005, Plaintiff again sought mental health treatment at Mental Health Services for Clark County and Madison County. (Tr. 314-67). A mental health counselor, Ms. Dailey, evaluated Plaintiff and noted that she reported that she had been in and out of mental hospitals most of her life, that she had been previously seen at Mental Health Services for a crisis state in June, 2004, that she was seen on two occasions and did not return for follow-up, that she had a history of substance abuse, that she had a history of abusive relationships, and that she was very vague about where she had received other treatment. *Id.* Ms. Dailey also noted that Plaintiff was fairly cooperative, her thought process seemed somewhat loose and tangential, her thought content tended to be self-defeating, her insight and judgment appeared to be good, and that she appeared to be irritable and angry. *Id.* Ms. Dailey identified Plaintiff's diagnosis as major depression, recurrent, and severe and she assigned Plaintiff a GAF of 51. *Id.* Plaintiff attended counseling sessions with Ms. Dailey and she occasionally saw psychiatrist Dr. Vishnupad who monitored her medications. *Id.* On July 11, 2006, Ms. Dailey and Dr. Vishnupad reported that Plaintiff had poor coping skills, had dysfunctional relationships with others, was not able to perform any work-related mental activities, and that she had moderate restrictions in her activities of daily living, marked difficulties

in maintaining social functioning, and extreme deficiencies in concentration. *Id.* Those mental health care providers also reported that Plaintiff had fair to poor abilities to make occupational adjustments, poor abilities to make performance adjustments, and good to poor abilities to make personal/social adjustments. *Id.* Plaintiff continued to receive mental health treatment at Mental Health services during the period July, 2006, through April, 2007. (Tr. 447-54; 467-68; 516-21).

The MA testified at the supplemental hearing that mental health experts have identified Plaintiff's diagnoses ranging from a depressive disorder NOS to major depressive disorder, recurrent, severe, that he (the MA) did not see evidence in the record of a bipolar disorder, and that there was no IQ testing in the record to support a diagnosis of borderline intellectual functioning. (Tr. 618-37). The MA also testified that Plaintiff did not satisfy the Listings, that she would be able to interact with others even if she preferred not to, and that she was capable of performing simple, repetitive tasks. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred in his weighing of treating psychiatrist Dr. Vishnupad's opinion and her therapist Ms. Dailey's opinion, and by failing to consider her impairments in combination. (Doc 8).

It is, of course, the Commissioner's function to weigh the evidence. *Young v. Secretary of Health and Human Services,* 787 F.2d 1064 (6th Cir.), *cert. denied,* 479 U.S. 990 (1986). Social Security matters not uncommonly involve the situation of conflicting medical evidence and the trier of fact has the duty to resolve that conflict. *Cf., Richardson v. Perales,* 402 U.S. at 399; *see also, Mullins v. Secretary of Health and Human Services,* 836 F.2d 980 (6th Cir. 1987).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir.

2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any

---

[1] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

8

specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

9

Judge Armstead noted that Dr. Vishnupad is Plaintiff's treating psychiatrist but he rejected Dr. Vishnupad's opinion primarily because it is inconsistent with Plaintiff's mental health treatment notes. (Tr. 27). In addition, Judge Armstead noted that Ms. Dailey is a social worker and therefore not an acceptable medical source. *Id.*

As noted above, Dr. Vishnupad and Ms. Dailey opined in July, 2006, that Plaintiff was not capable of performing any work-related mental activities. However, their opinion is not supported by Ms. Dailey's clinical notes. For example, at the time of Plaintiff's May, 2005, evaluation, while she was guarded, had a depressed mood and sad affect, and needed to be refocused at times, she was oriented, denied hallucinations, suicidal ideations, and had good insight and judgment. At that time, Plaintiff was assigned a GAF of 51, indicating, at worst, moderate difficulties.

Over the course of her mental health treatment, Plaintiff's mood ranged from depressed to improved depending primarily on her interpersonal relationships particularly with her husband and "family chaos". In addition, Plaintiff consistently dressed appropriately, paid good attention to her grooming, consistently denied suicidal and homicidal ideation, displayed no abnormal psychomotor activities, was coherent, had an intact memory, had good insight and judgments, and had normal speech and thought content. Additionally, the record indicates and Dr. Vishnupad reported that Plaintiff had numerous "no shows" and cancelled appointments.

Further, Plaintiff's treatment notes are essentially a recitation of Plaintiff's self-reported symptoms and complaints. However, the record indicates that Plaintiff is an inconsistent and unreliable source of information. For example, on her applications for benefits, Plaintiff reported that she had completed four years or more of college, (Tr. 111), she reported to Dr. Tanley

that she went to the ninth grade in regular classes, (Tr. 215), during the ProWork evaluation, she reported that she may have finished the eighth grade, (Tr. 270), at the first hearing, she testified that she was a high school graduate, (Tr. 574), and at the supplemental hearing, she testified that she completed the eighth grade. (Tr. 613). Additionally, at the time she was evaluated at ProWork, Plaintiff reported that she had been hospitalized twice for mental health issues, (Tr. 269), but at the time of her May, 2005, evaluation at Mental Health Services, she reported that she had been in and out of mental hospitals most of her life. (Tr. 352).

Further, Dr. Vishunpad's and Ms. Dailey's opinions are inconsistent with Dr. Tanley's opinion, the MA's opinion, and the reviewing mental health experts' opinions. (Tr. 218-36).

Finally, Judge Armstead correctly noted that Ms. Dailey is not an acceptable medical source. 20 C.F.R. §§ 404.1513, 416.913.

Under these facts, the Commissioner did not err by rejecting Dr. Vishunpad's and Ms. Dailey's opinions.

Plaintiff argues next that the Commissioner erred by failing to consider her impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed

to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge Armstead's opinion shows that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 25, 26, 28. In addition, Judge Armstead referred to Plaintiff's impairments in combination when he determined that she does not satisfy the Listings. (Tr. 30, finding 3). Accordingly, the Commissioner did not err by failing to consider Plaintiff's impairments in combination.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 4, 2010.

                       s/ *Michael R. Merz*
                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).